## AFFIDAVIT OF SPECIAL AGENT SHEILA R. MAGOON
## IN SUPPORT OF A CRIMINAL COMPLAINT

I, Sheila R. Magoon, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent of the Federal Bureau of Investigation and have been employed as such since September 2003.  I have been assigned to the Economic Crimes Squad in the Boston Field Office since 2004.  In that capacity, my responsibilities include the investigation of federal offenses including, but not limited to, bank fraud, tax fraud, money laundering, and other financial crimes.  I am a certified public accountant.

2.      I am currently investigating KAYLA FIGELSKI for violations of certain federal laws, including bank fraud and tax fraud.

3.      I make this affidavit in support of a criminal complaint charging KAYLA FIGELSKI with bank fraud in violation of 18 U.S.C. § 1344.

4.      As described further below, I have probable cause to believe, and do believe, that beginning no later than April 2017 and continuing through at least June 2019, FIGELSKI engaged in a scheme and artifice to defraud and to obtain money that was in the custody and control of a domestic financial institution by means of materially false and fraudulent pretenses and representations.  Specifically, FIGELSKI wrote and negotiated checks payable to herself that were drawn on bank accounts of her employer, without authorization to do so, and then cashed the checks or deposited them into a bank account FIGELSKI controlled.

5.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses, including the Malden Police Department.  This affidavit is intended to show merely that there is probable cause and does not set forth all of my knowledge about this matter.

1

## PROBABLE CAUSE TO BELIEVE THAT
## FIGELSKI COMMITTED A FEDERAL CRIME

6.      FIGELSKI currently resides in Malden, Massachusetts.

7.      In or around 2005, the owner of a Malden, Massachusetts law firm (the "Law Firm"), who works as a solo practitioner, hired FIGELSKI to work as her part-time office assistant.  The attorney primarily practices elder law and probate and estate administration.  As part of her practice, the attorney manages a number of conservatorship and trust accounts on behalf of her elderly clients or their estates.

8.      The attorney subsequently promoted FIGELSKI to a full-time office manager position, a position FIGELSKI held at all times relevant to this affidavit.  Upon her promotion, FIGELSKI was the only employee of the Law Firm.

9.      The Law Firm maintained an operating account ending in -7213 (the "Operating Account") at Citizens Bank, a federally insured financial institution.  The Law Firm also maintained several client conservatorship, estate administrator, and trust accounts at Citizens Bank (collectively, the "Conservatorship Accounts"):

| |
|---|
| -1023 Account |
| -1600 Account |
| -3663 Account |
| -4057 Account |
| -4533 Account |
| -5341 Account |
| -6907 Account |
| -7511 Account |

10.     FIGELSKI's employer was the sole authorized signer on the Operating Account and the Conservatorship Accounts.

11.     FIGELSKI did not have check signing authority for any of the Law Firm's bank accounts—Operating, Conservatorship, or otherwise.  However, the attorney occasionally asked FIGELSKI to write checks from the Law Firm's Operating Account, which the attorney then signed.  On these occasions, FIGELSKI would take the Operating Account checks from their location in her employer's desk to write out the checks.

12.     Similarly, the attorney occasionally asked FIGELSKI to write out checks from the Conservatorship Accounts, which the attorney likewise signed after they were prepared.  On these occasions, FIGELSKI would take the checkbooks for the individual Conservatorship Accounts from their storage bin in her employer's office to write out the checks.

13.     As part of her duties, FIGELSKI would sort the Law Firm's mail, including bank statements from Citizens Bank.  If bank statements arrived in the mail, FIGELSKI was to put them in a cabinet drawer in her employer's office.

14.     FIGELSKI maintained her own personal checking account at Citizens Bank (the "-9904 Figelski Account").  FIGELSKI was the sole authorized signer on the -9904 Figelski Account.

## Overview of FIGELSKI's Scheme

15.     Beginning no later than April 2017 through in or about June 2019, FIGELSKI stole more than $795,000 from her employer by writing checks to herself from the Law Firm's Operating Account and the Conservatorship Accounts, forging her employer's signature on the checks, negotiating the checks by depositing them into the -9904 Figelski Account and withdrawing some or all of the funds in cash, or directly converting the funds to cash without first depositing the checks.  In an effort to conceal her theft and deception, with respect to the 2017 bank statements mailed to the Law Firm, FIGELSKI altered the statements by writing in a

legitimate purported payee in place of her name.  With respect to the 2018 and 2019 bank statements mailed to the Law Firm, the Law Firm has been unable to locate them and her employer believes FIGELSKI may have stolen them.

16.    A review of bank records for the Law Firm and FIGELSKI revealed that approximately 434 checks drawn on the Law Firm's Operating Account or the Conservatorship Accounts, made payable to FIGELSKI and with the forged signature of her employer, were deposited into the -9904 Figelski Account and subsequently withdrawn, or directly cashed.  The checks totaled $796,747.98.

<u>Example 1</u>

17.    On or about June 26, 2017, Check 3179 in the amount of $750.00 was drawn on the Law Firm's Operating Account and made payable to FIGELSKI.



18.    FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

19.    This check was endorsed with FIGELSKI's name.  The check was negotiated on or about June 27, 2017, with $700.00 being withdrawn in cash and the remaining $50.00 being deposited into the -9904 Figelski Account.



20.     The bank statement that Citizens Bank mailed to the Law Firm reflecting the

payment of Check 3179 was subsequently modified.  In the Law Firm's records, the image of the

check in the bank statement was altered to reflect that Check 3179 was made payable to "Sarnie

Carpet" rather than FIGELSKI, the actual payee.



Example 2

21.     On or about November 3, 2017, Check 3393 in the amount of $715.00 was drawn

on the Law Firm's Operating Account and made payable to FIGELSKI.



22.     FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

23.     This check was endorsed with FIGELSKI's name.  The check was negotiated on or about November 6, 2017, with $600.00 being withdrawn in cash and the remaining $115.00 being deposited into the -9904 Figelski Account.



24.     The bank statement that Citizens Bank mailed to the Law Firm reflecting the payment of Check 3393 was subsequently modified.  In the Law Firm's records, the image of the check in the bank statement was altered to reflect that Check 3393 was made payable to "Middlesex Probate Court" rather than FIGELSKI, the actual payee.



Example 3

25.     On or about November 25, 2017, Check 137 in the amount of $1,852.51 was drawn on the -4057 Account and made payable to FIGELSKI.



26.     FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

27.     This check was endorsed with FIGELSKI's name.  The check was negotiated on or about November 27, 2017, with $600.00 being withdrawn in cash and the remaining $1,252.51 being deposited into the -9904 Figelski Account.



28.     On or about November 27, 2017, the same date as the $1,252.51 deposit, $920.00 was withdrawn from the -9904 Figelski Account in three (3) ATM transactions.  In addition, on that same date, four (4) POS Debit transactions totaling $267.99 were posted to the -9904 Figelski Account for transactions at Walgreens, Amazon, Dollar Tree, and BJ's Wholesale.

```
11/27      42.65  2746 POS Debit - 999999 Walgreens Store 18malden MA
11/27      99.00  2746 POS Debit - 251001 Amazonprime Memberamzn.Com/P Rmewa
11/27      20.00  2746 ATM Cash - Mz3800 S & S Malden Charles St 2, Malden MA
11/27       2.99  2746 Dbt Purchase - 300500 Dunkin #300571 Q35malden MA
11/27      27.25  2746 POS Debit - 654640 Dollar Tree Malden MA
11/27      33.20  2746 Dbt Purchase - Fkar00 Franks Auto Repairmalden MA
11/27     400.00  2746 ATM Cash - Mz3515 Malden Center, Malden MA
11/27     500.00  2746 ATM Cash - Mz3515 Malden Center, Malden MA
11/27      99.09  2746 POS Debit - 999999 Bjs Wholesale #0 6dedham MA
```

## Example 4

29.     On or about February 14 and 15, 2018, Checks 4885, 4886, and 4887 in the amounts of $750.00, $525.00, and $1,750, respectively, were drawn on the Law Firm's Operating Account and made payable to FIGELSKI.  These checks totaled $3,025.00.





8

30.     FIGELSKI's employer has confirmed that she did not sign these checks and did not authorize FIGELSKI to write the checks.

31.     These checks were endorsed with FIGELSKI's name.  The checks were negotiated on or about February 15, 2018, with $1,000.00 being withdrawn in cash and the remaining $2,025.00 being deposited into the -9904 Figelski Account.



32.     On or about February 15 and 16, 2018, $760.00 was withdrawn from the -9904 Figelski Account in two (2) ATM withdrawals.

```
02/15          263.00  2746 ATM Cash - Imad07
02/15            3.00  Non-Citizens ATM Fee - Imad07
02/16          113.55  2746 POS Debit - 999999 Kohls 0531 3850 Mymedford MA
02/16          503.00  2746 ATM Cash - Imad11
02/16            3.00  Non-Citizens ATM Fee - Imad11
```

Example 5

33.    On or about April 3, 2018, Check 1028 in the amount of $3,000.00 was drawn on the -7511 Account and made payable to FIGELSKI.



34.    FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

35.    This check was endorsed with FIGELSKI's name.  The check was negotiated on or about April 3, 2018, with $1,600.00 being withdrawn in cash and the remaining $1,400.00 being deposited into the -9904 Figelski Account.



36.    On or about April 4 and 5, 2018, $1,620.00 was withdrawn from the -9904 Figelski Account in six (6) ATM withdrawals.

```
04/04        503.00  2746 ATM Cash - Imad11
04/04        503.00  2746 ATM Cash - Imad11
04/04          3.00  Non-Citizens ATM Fee - Imad11
04/04          3.00  Non-Citizens ATM Fee - Imad11
04/05        202.50  2746 ATM Cash - P32801 229 Highland Ave Malden MA
04/05        202.50  2746 ATM Cash - P32801 229 Highland Ave Malden MA
04/05         22.50  2746 ATM Cash - P32801 229 Highland Ave Malden MA
04/05        202.50  2746 ATM Cash - P23851 271 Highland Ave Malden MA
04/05          3.00  Non-Citizens ATM Fee - P32801 229 Highland Ave Malden MA
04/05          3.00  Non-Citizens ATM Fee - P32801 229 Highland Ave Malden MA
04/05          3.00  Non-Citizens ATM Fee - P32801 229 Highland Ave Malden MA
04/05          3.00  Non-Citizens ATM Fee - P23851 271 Highland Ave Malden MA
```

Example 6

37.     On or about August 21, 2018, Checks 4294 and 4295 in the amount of $1,776.30 and $2,832.10, respectively, were drawn on the Law Firm's Operating Account and made payable to FIGELSKI.  The total amount of these two checks was $4,608.40.



38.     FIGELSKI's employer has confirmed that she did not sign these checks and did not authorize FIGELSKI to write the checks.

39.     These checks were endorsed with FIGELSKI's name.  The checks were negotiated on or about August 22, 2018, with $1,500.00 being withdrawn in cash and the remaining $3,108.40 being deposited into the -9904 Figelski Account.



40.     On or about August 23, 2018, $1,600.00 was withdrawn from the -9904 Figelski Account in three (3) ATM withdrawals.

```
08/23          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
08/23          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
08/23          400.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
```

Example 7

41.     On or about October 5, 2018, Check 148 in the amount of $5,146.71 was drawn on the -4057 Account and made payable to FIGELSKI.



12

42.     FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

43.     This check was endorsed with FIGELSKI's name.  The check was negotiated on or about October 9, 2018, with $1,500.00 being withdrawn in cash and the remaining $3,646.71 being deposited into the -9904 Figelski Account.



44.     On or about October 9, 2018, $3,560.00 was withdrawn in seven (7) ATM withdrawals from the -9904 Figelski Account.

```
10/09        600.00  2832 ATM Cash - Mz3337 Spring Street 1, Medford MA
10/09        600.00  2832 ATM Cash - Mz3337 Spring Street 1, Medford MA
10/09        300.00  2832 ATM Cash - Mz3337 Spring Street 1, Medford MA
10/09        600.00  2832 ATM Cash - Mz3800 S & S Malden Charles St 2, Malden MA
10/09        600.00  2832 ATM Cash - Mz3800 S & S Malden Charles St 2, Malden MA
10/09        300.00  2832 ATM Cash - Mz3800 S & S Malden Charles St 2, Malden MA
10/09         69.00  2832 Dbt Purchase - 011125 Revere Pet Clinic Revere MA
10/09        560.00  2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
```

## Example 8

45.     On or about January 2, 2019, Check 109 in the amount of $6,430.10 was drawn on the -1023 Account and made payable FIGELSKI.



46.     FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

47.     This check was endorsed with FIGELSKI's name.  The check was negotiated on or about January 2, 2019, with $1,500.00 being withdrawn in cash and the remaining $4,930.10 being deposited into the -9904 Figelski Account.

48.     On or about January 3 and 4, 2019, $3,000.00 was withdrawn from the -9904 Figelski Account in six (6) ATM withdrawal transactions.

49.     On or about January 4, 2019, an additional $1,500.00 was withdrawn from the -9904 Figelski Account in cash.



Example 9

50.     On or about January 25, 2019, Check 108 in the amount of $5,781.34 was drawn on the -4533 Account and made payable to FIGELSKI.



51.     FIGELSKI's employer has confirmed that she did not sign this check and did not authorize FIGELSKI to write the check.

52.     On or about January 25, 2019, Check 158 in the amount of $1,286.10 was drawn on the -3663 Account and made payable to FIGELSKI.



53.    FIGELSKI's employer has confirmed that she did not sign this check and did not

authorize FIGELSKI to write the check.

54.    These checks were endorsed with FIGELSKI's name.  The checks were

negotiated on or about January 28, 2019, with $2,000.00 being withdrawn in cash and the

remaining $5,067.44 being deposited into the -9904 Figelski Account.



55.    On or about January 28, 29, and 30, 2019, $4,700.00 was withdrawn from the

-9904 Figelski Account in nine (9) ATM transactions.

```
01/28          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
01/28          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
01/28          500.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
01/29          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
01/29          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
01/29          300.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
01/30          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
01/30          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
01/30          300.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
```

Example 10

56.    On or about May 21, 2019, Checks 132 and 133 in the amount of $7,363.45 and

$3,642.59, respectively, were drawn on the -1600 Account and made payable to FIGELSKI.





17

57.     FIGELSKI's employer has confirmed that she did not sign these checks and did not authorize FIGELSKI to write the checks.

58.     These checks were endorsed with FIGELSKI's name.  The checks were negotiated on or about May 21, 2019, with $2,000.00 being withdrawn in cash and the remaining $9,006.04 being deposited into the -9904 Figelski Account.



59.     On May 22 and 23, 2019, $3,900 was withdrawn from the -9904 Figelski Account in seven (7) ATM transactions.

```
05/22          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
05/22          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
05/22          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
05/22          600.00   2832 ATM Cash - Mz3515 Malden Center, Malden MA
05/23          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
05/23          600.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
05/23          300.00   2832 ATM Cash - Mz3518 Spring Street 2, Medford MA
```

60.     On or about May 22, 2019, there was an additional $3,500 cash out withdrawal from the -9904 Figelski Account.

18

**Withdrawal - Checking/Money Market**

| Transaction: | WITHDRAWAL | | DIN: | 0157021329 |
| Branch | 101157 | | Date/Time: | 05/22/2019   5:45 PM |
| Branch Name: | Everett S&S | | Gender: | Debit |
| User ID: | BRANCHXD105619 | | Status: | OL |
| Comment: | | | | |

**Substitute Image/Virtual Document**

| AUXILIARY | R/T | ACCOUNT | PC/TC | AMOUNT |
| 0157021329 | 5990-1102 | ▮9904 | | $3500.00 |

## FIGELSKI's Interview

61.     On or about June 25, 2019, FIGELSKI participated in a voluntary, recorded interview at the Malden Police Department with Malden Police Detective Robert DiSalvatore, who is presently assigned to the FBI's Violent Crime Task Force as a Special Deputy U.S. Marshal.  I have reviewed the recording of this interview.  Prior to interviewing FIGELSKI, Det. DiSalvatore reviewed with FIGELSKI her *Miranda* rights.

62.     At the time of the interview, approximately $325,000 was estimated to have been taken from the Law Firm's Operating Account.  The embezzlement from the Conservatorship Accounts had not yet been discovered.

63.     During the interview, FIGELSKI admitted cashing checks drawn on the Law Firm's Operating Account that were made out to her.  FIGELSKI could not pinpoint exactly when she began embezzling from the Law Firm, but suggested she started writing checks to herself shortly before January 2019.  FIGELSKI, however, did not believe that she took the $325,000 estimated to have been stolen at the time.  In my experience, individuals engaging in embezzlement often underestimate the amount they have stolen.

64.     During the interview, FIGELSKI further explained that she had been taking prescription painkillers on and off since a car accident in 2007, and used the money she stole to

19

fund her illicit drug habit.  FIGELSKI stated that she needed the drugs to function, but denied that she had taken drugs recently.

## CONCLUSION

65.     Based on my knowledge, training, and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that FIGELSKI committed bank fraud, in violation of 18 U.S.C. § 1344, by, on or about June 27, 2017, fraudulently representing herself to be an appropriate payee of a $750.00 check drawn on the Law Firm's Operating Account.

Respectfully submitted,

Sheila R. Magoon
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on
December 18, 2019

The Honorable David H. Hennessy
United States Magistrate Judge